[No. 2317.]

POWELL, INTERVENER, v. THE NATIONAL BANK OF COMMERCE OF DENVER.

1. **Practice—Appearance.**

Where counsel for defendant in an action, at the time of presenting and arguing a motion in court chambers to discharge a receiver, handed to counsel for plaintiff a copy of an answer in the cause, and stated that the original would be filed, and availed himself of the answer in presenting the motion to discharge the receiver, it constituted a general appearance by defendant whether or not the original answer was filed.

2. **Chattel Mortgages—Receivers—Notice—Lis Pendens.**

Where a chattel mortgage was executed pending an action against the mortgagor for the appointment of a receiver, evidence that prior to the execution of the chattel mortgage counsel for mortgagee was present representing mortgagee at the hearing of a motion to discharge the receiver, and that other counsel for mortgagee prepared the resolution adopted by the board of directors of the mortgagor, a corporation, authorizing the execution of the chattel mortgage and recited in said resolution the appointment of the receiver, was sufficient to show actual knowledge on the part of the mortgagee of the pendency of the suit against the mortgagor.

3. **Pleading—Demand for Relief—Jurisdiction.**

Where a complaint was filed alleging facts which would entitle plaintiff to a money judgment, it was sufficient to give

the court jurisdiction of the subject-matter notwithstanding the complaint contained no demand or prayer for judgment.

**4. Lis Pendens—Personal Property.**

The doctrine of lis pendens applies to all personal property except negotiable instruments transferred before maturity and articles of ordinary commerce sold in the usual way, where the purchaser has no notice of the pendency of the suit.

**5. Same.**

While the doctrine of lis pendens has been modified and relaxed as to real estate by section 36 Mills' Ann. Code, as to personal property, it remains as at common law.

**6. Receivers—Jurisdiction—Judgments—Collateral Attack.**

Where a receiver was appointed in an action in which the court had jurisdiction of the parties and subject-matter, the judgment of the court appointing the receiver cannot be questioned in a collateral proceeding.

**7. Receivers—Chattel Mortgages—Lis Pendens.**

Pending an action for the recovery of a debt and asking for the appointment of a receiver to take charge of all of defendant's assets, defendant executed a chattel mortgage covering practically all of its assets, the mortgagee having actual knowledge of the pendency of the suit. After the execution of the chattel mortgage the receiver was appointed, as prayed for in the action. Held, that the order appointing the receiver related back to the time the court acquired jurisdiction of the subject-matter and parties, and took precedence over the chattel mortgage, and the receiver was entitled to recover possession of said assets from the mortgagee.

*Appeal from the District Court of Arapahoe County.*

Mr. A. J. RISING, and Messrs. BICKSLER, McLEAN & BENNETT, for appellant.

Messrs. ROGERS, CUTHBERT & ELLIS, for appellee.

Mr. HENRY T. ROGERS and Mr. DANIEL W. TEARS, of counsel.

GUNTER, J.

August 21, 1895, a complaint, Carpenter Paper Company, plaintiff, The Arapahoe Paper Company, defendant, was filed in the district court of Arapahoe

county, alleging two causes of action: one upon an accepted draft, the other upon an account. The facts so stated were sufficient if proven to entitle the plaintiff to a money judgment. The complaint further alleged the admitted insolvency of defendant corporation, the wasting of its assets by the corporate officers, that it was about to discontinue business, and other facts, for the purpose of securing the appointment of a receiver. A receiver of all of the assets of defendant was asked. The complaint in presenting the causes of action upon the draft and account was defective in omitting a prayer for a money judgment. An affidavit was also filed containing further allegations in aid of the prayer for a receiver. Upon these pleadings and *ex parte* the court, August 21, determined that a receiver should be granted, and appointed one, ordering him to take charge of the business and assets of defendant. The following morning, August 22, counsel for the respective parties met at the chambers of the judge who had made the order, and one of counsel for defendant handed to plaintiff's counsel a copy of an answer to the complaint, stating that the original would be filed. This answer denied that the indebtedness set out in one cause of action of the complaint was due; denied all allegations pertinent to the appointment of a receiver, and concluded with a prayer for leave to file an additional answer, and for such other relief as might seem to the court proper. The answer was availed of by counsel for defendant in presenting the motion then taken up for the discharge of the receiver. This was a general appearance by the defendant, and it is immaterial whether the original answer was filed or not.

"Other methods of acquiring jurisdiction authorized by law are equivalent to the personal service of process. Thus, *lis pendens* will commence, without

the issuance or service of process, from the entry in the cause of the voluntary appearance of the defendant.''—Am. and Eng. Ency. of Law, Vol. 21, p. 611.

Immediately before the argument of the motion to discharge the receiver, while counsel for defendant was present, plaintiff asked leave to file, and filed, an amended complaint, differing from its complaint of August 21 in containing a prayer for judgment in the sum therein sought to be recovered. The filing of the amended complaint, and the argument of the motion to discharge the receiver were during the morning of August 22. Counsel representing defendant were present, and also counsel representing the appellee herein. We say counsel representing appellee was present, because Mr. Rogers, of Rogers, Cuthbert & Ellis, participated in the hearing, and when asked by counsel for plaintiff whom be represented, stated that he was there in behalf of the National Bank of Commerce, appellee herein.

The court sustained the motion to discharge the receiver. On the announcement of this ruling counsel for plaintiff was permitted to file an amended petition for the appointment of a receiver differing in no particular, material to this ruling, from the petition filed August 21, and had the same set for hearing August 26. On the night of August 22 The Arapahoe Paper Company gave a chattel mortgage to W. B. Morrison to secure an indebtedness of $9,500.00 to appellee, the mortgage covering substantially all of the assets of the mortgagor. The indebtedness was evidenced by a note payable to Morrison, later assigned to appellee. August 22, before the giving of the chattel mortgage, a resolution was prepared by Mr. Ellis, of Rogers, Cuthbert & Ellis, as counsel for appellee, for passage by the board of directors of The Arapahoe Paper Company, authorizing the giv-

ing of the chattel mortgage, in which resolution the pendency of the action for the appointment of a receiver is recited.  Mr. Rogers represented the interest of appellee when present at the argument to discharge the receiver, August 22.  Mr. Ellis represented appellee in drawing the above resolution. Among the recitals of this resolution appears:

"Whereas, upon the application of the Carpenter Paper Company a receiver was on the 21st of August, A. D. 1895, appointed by the district court of Arapahoe county, Colorado, to take charge of the property and assets of this company."

From these facts it is clear that appellee had actual notice of the pendency of the action in which the appointment of a receiver was sought when the chattel mortgage was given.  August 24 plaintiff in the action commenced August 21, sued out a writ of attachment and had the same levied upon the property covered by the chattel mortgage.  The petition for the appointment of a receiver set for August 26, was heard August 29, and the ruling of August 22, vacating the order of August 21, appointing a receiver, was set aside and the order of August 21 was reinstated, modified only as to the name of the receiver and the penalty of the bond.

September 5, 1895, appellee brought replevin for the property covered by its chattel mortgage against the sheriff who had levied thereon under the writ of attachment.  September 27, appellant, as receiver of The Arapahoe Paper Company, intervened in the replevin suit, claiming the possession of the property involved under the order of August 29 designating him as receiver.  The court below dismissed his petition of intervention.  He appeals.  The order of August 29 appointing a receiver is still in force.

This intervention is by appellant as receiver against appellee, the owner of the chattel mortgage,

to recover possession of the property covered thereby. Its determination depends upon whether the order of August 29 appointing a receiver relates back as against the chattel mortgage to an hour prior to the giving of that instrument, that is, prior to 11 p. m. August 22. If the order so relates, the judgment below should have been for intervener.

1. The complaint filed August 21 stated facts constituting two causes of action, and these facts, if proven, would entitle plaintiff to a money judgment. The complaint was defective only in the absence of a prayer for judgment in favor of plaintiff and against defendant for the indebtedness stated. The court, if asked, should have permitted an amendment containing a prayer for judgment. This amendment was made the morning of August 22, when the amended complaint was filed.

"The relief demanded does not limit the plaintiff in respect to the remedy which he may have; the court will disregard the prayer and rely upon the facts alleged and proved as the basis of its remedial action."—Pomeroy's Remedies and Remedial Rights, §§ 71, 83, 580, and cases cited; *Nevin v. Lulu & White S. M. Co.,* 10 Colo. 357, 364, 15 Pac. 611.

"If the facts put in issue and established by the evidence entitle the party to any relief in the power of the court to give, although not that demanded, it is the duty of the court to give it, and its power to do so is not conditioned upon the form of the prayer."—Bliss on Code Pleading, § 161; *Kayser v. Maughan,* 8 Colo. 232, 251, 6 Pac. 803.

"Under our present Code the form of the prayer seems to be immaterial."—*Waterbury v. Fisher,* 5 Colo. App. 362, 371, 47 Pac. 277.

"Civil actions shall be commenced by the filing of a complaint with the clerk of the court in which

the action is brought, * * *."—Mills' Ann. Code, sec. 32.

"From the time of the filing of the complaint, or the service of the summons in a civil action, the court shall be deemed to have acquired jurisdiction, and to have control of all subsequent proceedings."—Mills' Ann. Code, sec. 44.

As a complaint was filed August 21 stating facts which, if proven, would authorize the court to enter a judgment in favor of the plaintiff and against defendant for the indebtedness claimed, an action was pending on such date, and on such date the court had acquired jurisdiction thereof. As we have stated, the defendant appeared by answer on the morning of August 22, so at the time of the argument of the motion to discharge the receiver, the parties were in court by complaint and answer, and the court had jurisdiction of the subject-matter and of the parties.

2. The case is reduced to this: August 21 plaintiff instituted an action to collect an indebtedness of defendant corporation, and in aid of the action asked the appointment of a receiver of the assets of the insolvent defendant. The order for a receiver was granted. August 22 the order was vacated. August 29 the order of August 21 was reinstated. All of these orders were of the same term. By answer defendant was before the court August 22. Appellee had actual notice of the pendency of the action at the hearing of August 22. While the defendant was personally before the court, and while appellee had actual notice of the pendency of the application for the appointment of a receiver, could the defendant give, and the appellee take, a mortgage on practically all of the assets of the defendant corporation to secure a past due indebtedness and thereby defeat the jurisdiction of the court in the suit pending?

"As a legal term, however, *lis pendens* denotes those principles and rules of law which define and limit the operation of the common-law maxim, *pendente lite nihil innovetur (innovandum)*—pending the suit nothing should be changed.  *  *  * The general rule as to *lis pendens* is that a person who acquires an interest in property involved in litigation, *pendente lite* and from a party litigant, takes subject to the rights of the other parties to the suit as finally adjudicated."—Am. and Eng. Ency. of Law (2d ed.), Vol. 21, pp. 594, 595.

"It (*lis pendens*) has the effect to bring the subject-matter of the litigation within the control of the court, and to render the parties powerless to place it beyond the power of the final judgment."—Freeman on Judgments, Vol. 1 (4th ed.), § 193.

"Courts have occasionally exhibited a reluctance in applying the doctrine of *lis pendens* to any property other than real estate.  And it has been said that at least no movable personal property, to which possession constitutes the chief evidence of title, is bound by the suit, in the hands of a bona fide purchaser without notice; but 'it may be conceded that at this day *lis pendens* applies with equal force to controversies in regard to personal property.' "—Freeman on Judgments, § 194, and authorities cited.

"I am thoroughly satisfied from a review of the authorities, that at the present time the doctrine is well established that, with the exception of negotiable paper, *lis pendens* applies to personal property as well as real estate."—Bennett on *Lis Pendens*, § 128. See also *id.* §§ 83, 129; Central Law Journal, Vol. 4, p. 27, and authorities cited; Central Law Journal, Vol. 31, p. 54, and authorities cited.

There are authorities which deny the application of the doctrine of *lis pendens* to personal property, but the decided weight of authority is that it

applies to all personal property except negotiable paper purchased before due, and articles of ordinary commerce sold in the usual way. We think the supreme court of the United States is in accord with this view.

In *County of Warren v. Marcy*, 97 U. S. 96, it was sought to apply the doctrine of *lis pendens* to a sale of certain coupons detached from the bonds and sold before maturity to a purchaser without actual notice of the proceeding in which the coupons had been successfully assailed. The court denied the application of the doctrine, not because the coupon was personal property, but because it was a negotiable instrument sold before maturity to a purchaser without notice of the action in which the coupon had been successfully attacked. In the course of the opinion the court said:

"It is a general rule that all persons dealing with property are bound to take notice of a suit pending with regard to the title thereto, and will, on their peril, purchase the same from any of the parties to the suit. But this rule is not of universal application. It does not apply to negotiable securities purchased before maturity, nor to articles of ordinary commerce sold in the usual way. This exception was suggested by Chancellor Kent, in one of the leading cases on the subject in this country, and has been confirmed by many subsequent decisions."

The case cites approvingly, *Murray v. Ballou* (1 Johns., ch. 566), and *Murray v. Lylburn* (2 Johns., ch. 441). In the latter case the doctrine of *lis pendens* was held to apply to choses in action (in that case, a bond and a mortgage) assigned by one of the parties *pendente lite*. Therein it was said by Chancellor Kent:

"If Winter had held a number of mortgages, and other securities, in trust, when the suit was com-

menced, it cannot be pretended that he might safely defeat the object of the suit, and elude the justice of the court, by selling these securities. If he possessed cash, as the proceeds of the trust estate, or negotiable paper not due, or perhaps movable personal property, such as horses, cattle, grain, etc., I am not prepared to say the rule is to be carried so far as to affect such sales. The safety of commercial dealing would require a limitation of the rule; but bonds and mortgages are not the subject of ordinary commerce; and they formed one of the specific subjects of the suit against Winter, and the injunction prohibited the sale and assignment of them, as well as of the lands held in trust."

In *Mellen v. Moline Iron Works,* 131 U. S. 352, a simple contract creditor of an insolvent corporation brought suit to have the affairs of the corporation placed in the hands of a receiver and to cancel a trust deed and chattel mortgage given on certain of its assets to one Hill. After personal service had been secured upon Hill, and pending the action, he transferred his claim against the insolvent company, and a trust deed and chattel mortgage securing the same, to Mellen. Later Mellen brought suit to collect the claim and to enforce the trust deed and chattel mortgage. It was held that the doctrine of *lis pendens* applied to the sale of the claim to Mellen, and that he and his *cestui que trust* were bound by the decree rendered in the original action canceling the claim.

In *Belmont Nail Co. v. Columbia I. & S. Co.,* 46 Fed. 8, the complainant, a creditor, filed its bill March 26, 1891, against The Columbia I. & S. Co. and the trustee named in the general mortgage of the defendant company. *Inter alia* the bill prayed for a winding up of the corporation, a distribution of the assets among its creditors, an injunction restraining the disposing of its assets *pendente lite,* and for a receiver.

The subpoena was served on the same day on the president of defendant company. April 2, 1891, a notice was served by the solicitor of plaintiff company upon the president of defendant company, notifying him that an application would be made April 4, 1891, for the appointment of a receiver, and for an injunction. In resistance of the motion for appointment of a receiver the defendant company, by affidavit, presented these facts: April 3, 1891, after the filing of the bill and service of the subpoena, and the day before the hearing of the motion for appointment of a receiver, at a meeting of the board of directors of defendant company it was resolved that for the purpose of preventing a receiver being appointed by the court an assignment should be made, which was accordingly done, which assignment purported to convey to the assignee in trust for the benefit of creditors all of the property of the company. It was claimed by defendant's counsel that under this state of facts application for a receiver should be refused. The court appointed the receiver, and stated its reason for so doing in the following citation from *Dovey's Appeal,* 97 Pa. St., 160:

"It (*lis pendens*) affects him, not because it amounts to notice, but because the law does not allow litigant parties to give to others, pending the litigation, rights to the property in dispute so as to prejudice the opposite party. * * * This is a rule of public policy, and the object of it is to prevent the parties from making a conveyance *pendente lite* of the property or thing which is the subject-matter of the controversy, and thus defeat the execution of the decree of the court. The effect of it is to impose a disability to convey from the time of the service of the subpoena upon the defendant."—Story's Equity Jurisprudence (12th ed.), § 406.

While the doctrine of *lis pendens* has been re-

laxed as to real estate by our Code (Mills' Ann. Code, § 36), as to personal property it remains as at common law.—*Leitch et al. v. Wells et al.,* 48 N. Y. 585, 602; Am. and Eng. Ency. of Law, Vol. 21, p. 631.

An exception to the operation of the rule of *lis pendens,* as we have stated, is the sale of negotiable securities before maturity, and of articles of ordinary commerce in the usual way; but when the purchaser has actual notice of the pendency of the suit the reason for this exception ceases, and in such case the sale is not within the exception.—Bennett on *Lis Pendens,* § 129.

"The case of *County of Warren v. Marcy,* 97 U. S. 96, decides that purchasers of negotiable securities are not chargeable with constructive notice of the pendency of a suit affecting the title or validity of the securities; but it has never been doubted that those who buy such securities from litigating parties, with actual notice of the suit, do so at their peril, and must abide the result the same as the parties from whom they got their title."—*Scotland Co. v. Hill,* 112 U. S. 95; *Warren v. Marcy, supra.*

3. It is contended that the court was without power to appoint a receiver upon the application of a simple contract creditor, and that its order to that effect was void. The court had jurisdiction of the subject-matter and of the parties. Among the questions which it had jurisdiction to determine was whether the facts presented a proper case for the appointment of a receiver. It determined that the facts were such as justified the appointment, and made it. If it committed error in so doing, it was error in the exercise of jurisdiction which it had, and not error in assuming jurisdiction; therefore, its judgment cannot be inquired into in a collateral proceeding.

In *Mellen v. Moline Iron Works, supra,* it was

contended that the simple contract creditor could not rightfully invoke the aid of a court of equity in its proceeding against the defendant corporation until it had, by obtaining judgment for its debt and suing out execution, exhausted its legal remedies.  The court said:

"But that was one of the questions necessary to be determined in the suit brought by that company, and any error in deciding it would not authorize even the same court, in an original, independent suit, to treat the decree as void.  Besides, the removal of alleged liens or incumbrances upon property, the closing up of affairs of insolvent corporations, and the administration and distribution of trust funds, are subjects over which courts of equity may have general jurisdiction.   *   *   *   An adjudication that a particular case is of equitable cognizance cannot be disturbed by an original suit.  Such adjudication is not void, even if erroneous."

*People ex rel. Lindsley, District Attorney, v. District Court*, 30 Colo. 488, 71 Pac. 388, was an application for a writ of prohibition, but in point as it involves a collateral assault on an order which the court holds could be attacked only in a direct proceeding.

*Tilton v. Cofield et al.*, 93 U. S. 163, 168, is a recognition of the existence of the doctrine of *lis pendens* in this jurisdiction.

*McClellen v. Phillips*, 6 Colo. App. 47, 39 Pac. 893, is not in conflict with the conclusion we have reached here, and a sufficient reason for distinguishing it from the present case is, there the mortgagee was without notice of the pending suit.

Between August 22, the date of the filing of the amended complaint, and the appearance of defendant, and August 29, the date of the order appointing a receiver, the mortgage in question was given, cover-

ing practically all of the assets of defendant. Appellee took this mortgage with actual notice of the action pending in which a receiver was sought of all the assets of the defendant corporation.

If the mortgage is sustained, the action, in aid of which the receiver was appointed, is practically defeated, as there would be no assets for the receivership to operate upon and apply to the satisfaction of the judgment that might be obtained. We think the order appointing the receiver relates back to the morning of August 22, when the court had jurisdiction of the subject-matter and the parties through the filing of the complaint and the appearance of defendant, and that it takes precedence over the later chattel mortgage. There is no occasion for us expressing an opinion as to whether it relates back to August 21. We express no opinion upon the validity of the authorization by the directorate of defendant company to execute the mortgage in question. This question seems not to have been before the trial court, and not to have been presented here until by a delayed reply brief of appellant. If the question had been urged in apt time below, the infirmity urged, if it exists, might have been cured. The question presented may not arise upon retrial, for this reason we do not consider it.

Judgment reversed.                    *Reversed.*